RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

WALTER BARRY, by his next friend Elaine Barry, on behalf of himself and all others similarly situated; DONITHA COPELAND; KENNETH L. ANDERSON; WESTSIDE MOTHERS,

*Plaintiffs-Appellees,*

No. 15-1390

*v.*

NICK LYON, in his official capacity as Acting Director, Michigan Department of Human Services,

*Defendant-Appellant.*

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:13-cv-13185—Judith E. Levy, District Judge.

Argued: October 6, 2015

Decided and Filed: August 25, 2016

Before: COLE, Chief Judge; DAUGHTREY and DONALD, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Joshua S. Smith, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Jacqueline Doig, CENTER FOR CIVIL JUSTICE, Flint, Michigan, for Appellees. **ON BRIEF:** Joshua S. Smith, William R. Morris, Kristin M. Heyse, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Jacqueline Doig, Katie Linehan, CENTER FOR CIVIL JUSTICE, Flint, Michigan, Miriam Aukerman, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Grand Rapids, Michigan, for Appellees. Martha Jane Perkins, NATIONAL HEALTH LAW PROGRAM, INC., Carrboro, North Carolina, Valerie R. Newman, STATE PLANNING BODY, Detroit Michigan, Thane M. Rehn, MUNGER, TOLLES & OLSON LLP, San Francisco, California, for Amici Curiae.

1

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge.    This class action challenges Michigan's fugitive-felon law and policy, under which any person with an outstanding felony warrant is disqualified automatically from receiving food assistance under the federal Supplemental Nutrition Assistance Program (SNAP).  This federal program is overseen by the U.S. Department of Agriculture and administered by the states.  The plaintiffs contend that Michigan's implementation procedure is invalid and that the notices regarding termination of benefits sent by the authorized Michigan administrator, the defendant here, violate the SNAP Act, 7 U.S.C. §§ 2011–2036c, and the Due Process Clause of the Fourteenth Amendment.  The district court granted summary judgment to the plaintiffs, finding that Michigan's fugitive-felon policy violated the Act and that the state's notification procedure denied the recipients due process.

On appeal, the state renews its claims that the plaintiffs lack standing, that mootness should have deprived the district court of authority to hear the case, and that there is no private right of action under the SNAP Act.  The state also argues that the Michigan law disqualifying fugitive felons is valid under SNAP and that its method of notifying applicants of their disqualification is procedurally valid.  We find no merit to these arguments, or to several other lesser claims raised on appeal, and we therefore affirm the district court's opinion.

**FACTUAL BACKGROUND**

**<u>SNAP and Fleeing Felons</u>**

Under SNAP, an individual is ineligible to receive benefits if he or she is "fleeing to avoid prosecution, or custody or confinement after conviction . . . for a crime, or attempt to commit a crime, that is a felony under the law of the place from which the individual is fleeing. . . ." 7 U.S.C. § 2015(k)(1)(A).  Section 2015(k)(2) requires the Secretary of Agriculture to define "fleeing" and "actively seeking" to "ensure that State agencies use consistent procedures established by the Secretary that disqualify individuals whom law enforcement

authorities are actively seeking for the purpose of holding criminal proceedings against the individual." *Id*. § 2015(k)(2). On September 10, 2015, the Secretary finalized the rule that was first proposed in 2011 to define these terms.[1] Clarification of Eligibility of Fleeing Felons Final Rule, 80 Fed. Reg. 54,410 (Sept. 10, 2015). It became effective on November 9, 2015. *Id.*; 7 C.F.R. § 273.11(n) (2015).

Previously, the states had been left to implement the "fleeing felon" disqualification on their own. Michigan's provision barred public assistance to any individual "subject to arrest under an outstanding warrant arising from a felony charge against that individual." Mich. Comp. Laws § 400.10b.[2] To effectuate this provision, Michigan developed an automated program, the "fugitive felon interface," that compares the list of public-assistance recipients with a list of outstanding felony warrants maintained by the Michigan State Police in the Law Enforcement Information Network (LEIN). Mich. Comp. Laws § 400.10c. When the program identifies a match, it automatically closes the SNAP recipient's file and generates a "notice of case action" informing the recipient of the termination of benefits.

The notice reads: "You or a member of your group is not eligible for assistance due to a criminal justice disqualification. Please contact your local law enforcement agency to resolve."[3] A Michigan Department of Health and Human Services (MDHHS) memo directs employees not to disclose information about a recipient's fugitive-felon status when asked about a criminal-

---

[1]The rule provides four criteria for identifying a fleeing felon:

1. There is a felony warrant for the individual.
2. The individual is aware of the warrant or should reasonably have expected it to issue.
3. The individual has taken some action to avoid being arrested or jailed.
4. Law enforcement is actively seeking the individual.

80 Fed. Reg. at 54,411. A state agency may adopt this test or, alternatively, may adopt the criteria set forth in the Stipulation of Settlement in *Martinez v. Astrue*, No. 08-CV-04735-CW (N.D. Cal. Aug. 11, 2009), which provides that an individual is disqualified only if a law enforcement officer presents an outstanding felony warrant for escape, flight to avoid, or flight-escape. 7 C.F.R. § 273.11(n)(1)(ii). "Actively seeking" means that a law-enforcement agency intends to enforce the warrant within 20 to 30 days. 7 C.F.R. § 273.11(n)(3).

[2]Despite the change in the federal rule defining eligibility, § 400.10b remains unchanged, as does § 400.10c regarding automatic disqualification.

[3]The text of this portion of the notice was later changed to "Please have the disqualified member of your group contact a local law enforcement agency – such as a police department, sheriff's department or the Michigan State Police – to resolve. The law enforcement agency will require you to provide picture identification."

justice disqualification but, instead, to direct the recipient to contact local law enforcement to resolve the warrant. In the meantime, the would-be recipient remains ineligible for assistance "as long as he or she is subject to arrest under an outstanding warrant."

**Plaintiffs**

Plaintiff *Walter Barry* is a mentally-disabled man who lives in Detroit with his mother, Elaine Barry. His history with the SNAP program well illustrates the difficulties that the bare-bones Michigan system can produce, and we therefore set it out here in some detail. In 2012, Walter was awarded $186 per month in food assistance, but in December of that year he received notice that beginning February 1, 2013, his benefits would be terminated due to a "criminal justice disqualification." The notice instructed him to contact his local law enforcement agency to resolve the issue and informed him that he had the right to a hearing. Elaine submitted the form to request a hearing on Walter's behalf and, in an effort to resolve the criminal-justice disqualification, she took Walter to the Detroit Police Department. There, Officer Turner fingerprinted him and provided a written statement confirming that Walter had no criminal history with that department. At Walter's MDHHS hearing on January 31, 2013, an administrative law judge found that MDHHS could not establish the basis for Walter's criminal-justice disqualification and ordered Walter's benefits reinstated immediately. The matter appeared to be resolved, and because his benefits were to have been terminated starting on February 1, but his hearing and reinstatement occurred on January 31, Walter did not miss any food assistance payments.

However, on May 16, 2013, MDHHS Office of Inspector General employee Robin Thomas submitted a statement indicating that she personally had verified through LEIN that Walter was subject to a felony warrant issued on September 2, 1989, by the Detroit Police Department. In a hearing summary dated May 22, 2013, Walter's MDHHS caseworker wrote that "there was still an outstanding warrant for this client as of 5/13/13 and the worker had to follow procedure and close the case again." As a result, Walter once again received a notice that his benefits would be terminated—this time effective June 1, 2013—due to a criminal-justice disqualification. Elaine again requested a hearing, noting in her request that an ALJ had already found MDHHS in error. Before a hearing could occur, Walter received yet another notice on

June 14, 2013, informing him that his benefits would be terminated on July 1 due to a criminal-justice disqualification. Walter filed the instant case in federal court on July 24, 2013, at which time he had not yet received a hearing on his May 2013 request and had not received his food benefits for July 2013.

The day after Walter filed his complaint in federal court, attorneys from the Michigan Attorney General's office advised him that he would receive his July food assistance benefits that day, and he did. The Attorney General's office also provided Walter's attorney with information about the warrant in his name and instructed her that Walter should go to the Detroit Police Department to be fingerprinted. Walter was told that he could receive a password to provide in case he was stopped on this warrant in the future. On August 7, 2013, Elaine again took Walter to the Detroit Police Department, and once again Officer Turner issued a statement regarding Walter's lack of criminal history. The next day, Officer Turner discovered the case number related to the warrant in question and issued another statement declaring specifically that Walter was not the person wanted in that case. It turned out that Walter's felony warrant resulted from his brother Darryl's use of Walter's name as an alias when Darryl was arrested some 25 years earlier. When Elaine learned that Darryl had used Walter's name, she intervened to ensure that Darryl went to court under his own name.

Prior to Walter's second hearing, scheduled for September 16, 2013, an attorney for the state sent notice to the ALJ assigned to his case, indicating that a hearing was unnecessary and that the case could be dismissed because MDHHS was cancelling the termination of benefits based on information received that the warrant was not valid. Walter's attorney objected to the dismissal because there was no indication that the underlying problem had been resolved or that MDHHS had changed its policy. The hearing took place as scheduled on September 16, 2013, and the attorney for the state argued on behalf of MDHHS that the ALJ had no jurisdiction because there was no longer an adverse action against Walter, given that the agency had placed an override in its system to rescind the notices terminating Walter's assistance. But the judge noted that the override was not a resolution compliant with MDHHS policy and reversed the state's termination decision because MDHHS did not prove the existence of a felony warrant against Walter.

Nevertheless, as of September 16, 2013, there still was a warrant in Walter's name. In early October 2013, an email from a Wayne County email address indicated that the case against Walter was dismissed in 1989, that there was no outstanding warrant, and that the warrant information would be removed from LEIN. But, on September 3, 2014, Elaine received a call from the MDHHS Office of Inspector General who told her that Walter had outstanding warrants that disqualified him from receiving assistance. Elaine took Walter back to the Detroit Police Department for the third time. Officer Turner checked LEIN and found that Walter's name still was in the system. Officer Turner provided a fourth statement regarding Walter's lack of criminal history. Defense counsel represented at a hearing in district court on November 14, 2014, that all of Walter's warrants had been resolved, but there is no evidence in the record supporting or refuting that assertion.

Plaintiff *Donitha Copeland* experienced nearly as much difficulty in establishing her eligibility for food assistance as did Walter Barry. In September 2012, Copeland had applied and was approved for $200 of food assistance per month. In November 2012, she filed a report with the Detroit Police Department indicating that she had been the victim of identity theft. The next month she received a notice that her benefits would be terminated on February 1, 2013, due to a criminal-justice disqualification. She reapplied in February 2013 but was denied.

Copeland contacted the local sheriff's office and learned there was a warrant for her arrest in Kalamazoo for writing bad checks, even though she had never been to Kalamazoo. She then contacted the Kalamazoo sheriff's office to advise that her identity had been stolen and to ask whether she could turn herself in to the Detroit police because she did not have the means to travel to Kalamazoo to resolve the situation. The sheriff advised her not to turn herself in to Detroit authorities because she could end up sitting in jail for a long time before she was transported to Kalamazoo. Eventually, Copeland obtained a *pro bono* criminal attorney and was able to travel to Kalamazoo so that she could turn herself in. After spending eight hours in jail, she was released on bond and was scheduled for a pretrial hearing. She returned to Kalamazoo for the hearing, again with the assistance of her attorney, and the charges were dismissed after photographic evidence established that she was not the person who had written the bad checks. Copeland moved to Alaska in 2014 for seasonal employment but intended to return to Michigan

in November 2014 and expected to apply for food assistance again when she did so. It is not clear whether she actually has returned or reapplied.

Plaintiff *Kenneth Anderson*, who requires oxygen 24 hours a day for chronic obstructive pulmonary disease (COPD) and is unable to walk unassisted, had been questioned in 2009 about drugs found in his home that belonged to his nephew. He was not arrested at that time, nor was he told that there was a warrant for his arrest. Anderson subsequently received approximately $200 per month in food assistance, but his case was closed in mid-2012 for failure to provide required paperwork. When he reapplied for food assistance in December 2012, his application was denied due to a purported criminal-justice disqualification. He spoke with his MDHHS caseworker, who told him that he had an outstanding felony warrant, issued in January 2013 for possession of heroin in 2009. Despite repeated attempts to reinstate his benefits, Anderson apparently still has an outstanding criminal warrant in his name and is not receiving food assistance.

Plaintiff *Westside Mothers* is a non-profit organization that advocates for the interests of public assistance applicants and recipients in connection with public assistance programs administered by MDHHS and the Social Security Administration. It educates its members and the public about government benefits and what to do if assistance is denied, and it furnishes advocacy and representation services for its members. Westside Mothers has 450 to 500 dues-paying members, including Donitha Copeland. Here, the group challenges Michigan's policies, alleging that they inhibit the growth and functioning of the organization.

## PROCEDURAL BACKGROUND

As previously noted, in the amended complaint that became the operative pleading in this case, the plaintiffs challenged the automatic fugitive-felon disqualification in Michigan Compiled Laws § 400.10b as a violation of their statutory rights under the federal SNAP Act and alleged that the disqualification notices violated both the Act and the Due Process Clause. After hearing oral argument on cross-motions for summary judgment, the district court granted judgment to the plaintiffs, certifying the class and holding that the state's policy violated the SNAP Act and the Constitution. The court also issued an injunction requiring the state to refrain

from automatic disqualifications based solely on the existence of a felony warrant and to provide adequate notices in the event of valid disqualification. Both the district court and this court denied the state's motions for a stay, and the district court has continued to enforce the injunction, although the record before us does not contain information regarding the state's compliance. Nor does the record on appeal or the docket in the district court indicate any action by the MDHHS to implement the new rule in 7 C.F.R. § 273.11(n), which clarifies disqualification of fugitive felons under the SNAP Act and has been in effect since November 2015.

## DISCUSSION

### Threshold Issues:  Standing and Mootness

The state argues that the plaintiffs lack constitutional standing to bring suit and contends that the named plaintiffs' claims are moot. To uphold the constitutional requirement that federal courts hear only active cases or controversies, as required by Article III, section 2 of the federal constitution, a plaintiff must have a personal interest at the commencement of the litigation (standing) that continues throughout the litigation (lack of mootness). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Standing is a threshold question in every federal case, and we review jurisdictional challenges based on standing *de novo*. *Miller v. City of Cincinnati*, 622 F.3d 524, 531 (6th Cir. 2010). Plaintiffs have standing if they suffer a "concrete," "particularized," and "actual" or "imminent" injury that is caused by a defendant's conduct and is likely to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61.

If the plaintiff ceases to have standing such that a live case or controversy no longer exists, the case becomes moot. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). An exception to the mootness doctrine exists for cases that are capable of repetition, yet evading review. *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). This exception applies if the challenged action is too brief to be litigated fully before it concludes and if "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* at 462. The party asserting the exception bears the burden of proof. *Lawrence v. Blackwell*,

430 F.3d 368, 371 (6th Cir. 2005). Recurrence of the issue need not be more probable than not; instead, the controversy must be capable of repetition. *Id.* (citing *Honig v. Doe*, 484 U.S. 305, 319 n.6 (1988)).

In this case, counsel for the state conceded at oral argument on the summary-judgment motion that plaintiff Walter Barry had standing at the commencement of the suit, which is the relevant time period for determining standing. *See Laidlaw*, 528 U.S. at 189 (defining standing as "[t]he requisite personal interest that must exist at the commencement of the litigation"). Although the state now attempts to breathe life back into this issue, the effort at resuscitation plainly fails. The state has a somewhat stronger argument in regard to mootness, pointing out that at the time of oral argument in the district court, Barry was receiving food assistance. But the district court found that Barry could reasonably expect to encounter additional difficulties with his benefits, based on the repeated problems he had faced in the past, including unjustified terminations or threats of termination. The record fully supports this conclusion and is a sufficient basis on which to conclude that the violation involved was capable of repetition but evading review.

The state argues on appeal, as it did below, that Kenneth Anderson lacks standing because his harm resulted from the erroneous LEIN information and his failure to request an administrative hearing to challenge the LEIN information or to take other steps to correct the erroneous warrant in his name, rather than from the state's action in disqualifying him. We find the state's attempt to abdicate responsibility unpersuasive, however. The plaintiffs were injured *at the time* the agency denied or terminated their food benefits and provided inadequate notice. Hence, the plaintiffs' injuries are fairly traceable to the defendant's fugitive-felon law and policies. *See Lujan*, 504 U.S. at 560. The state offers no argument to support a claim of mootness as to this plaintiff.

The district court correctly found that Donitha Copeland had standing at the commencement of this action but that the question of mootness in connection with her claims was a closer one, given her relocation to Alaska during the pendency of the case. Additionally, she no longer was listed as a fugitive felon as of September 2014. But the district court also noted that Copeland's absence at the time was potentially temporary and that she could be

subject to a fugitive-felon disqualification on her return to Michigan because the felony warrant lodged against her had been dismissed without prejudice and could be reinstated or because her identity has been stolen and could be used again to commit a felony, resulting in issuance of another warrant in her name.

Although the district court was faced with a good deal of uncertainty surrounding Copeland's circumstances, the chain of potential events does not have to be air-tight or even probable to support the court's finding of non-mootness. Instead, it is sufficient that Copeland *possibly* could have found herself once again in the same situation she faced when this suit was filed. *Honig*, 484 U.S. at 319 n.6; *see also Roe v. Wade*, 410 U.S. 113, 125 (1973) (holding that end of pregnancy did not moot the case because the plaintiff was capable of becoming pregnant again).

The district court held that Westside Mothers lacked independent standing but had associational standing, which exists if an association's members have standing; if the interests at stake are relevant to the organization's purpose; and if the claims and relief do not require the participation of individual members. *Laidlaw*, 528 U.S. at 181. Westside Mothers meets the second requirement because it advocates for public assistance and protests its unjustified denial. And it meets the third requirement because the declaratory and injunctive relief sought pertains to the state's policy as a whole and does not require the participation of individual members to resolve. The possible missing link is Copeland, the only named plaintiff shown by the record to hold membership in the association. Based on our decision that she has standing, we hold that the organization has standing also.

## The Plaintiffs' Right of Action under SNAP

The state argues on appeal, as it did below, that neither the SNAP Act nor the Supremacy Clause creates a private right of action for the plaintiffs to enforce. This contention raises issues of statutory interpretation, which we review *de novo*. *Ammex, Inc. v. United States*, 367 F.3d 530, 533 (6th Cir. 2004).

To show that a statutory provision creates a federal right for a particular class of persons, enforceable under § 1983, a plaintiff must demonstrate: (1) that Congress intended the provision

to benefit the plaintiff, (2) that the protected right is sufficiently definite for courts to enforce, and (3) that the statute imposes a binding obligation on the states using mandatory, rather than precatory, terms. *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997); *Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir. 2006). "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (footnote omitted). However, the defendant may rebut this presumption by showing that Congress did not intend private enforcement of that right; such intent may be found in the language of the statute or inferred from Congress's creation of an incompatible comprehensive enforcement scheme. *Harris*, 442 F.3d at 461.

We are directed by case law to analyze the specific statutory provisions at issue. *See John B. v. Goetz*, 626 F.3d 356, 362 (6th Cir. 2010) (holding that the private-right-of-action analysis focuses on the individual provision of the statute at issue, not the statute as a whole); *see also Blessing*, 520 U.S. at 342–45 (explaining that the Supreme Court's rights-creation analyses have focused on a specific statutory provision or right, not on whether an entire statute creates rights, in general). The relevant SNAP provisions at issue here are 7 U.S.C. §§ 2014(a) and 2020(e)(10), both of which grant certain rights of assistance to eligible "households" participating in the Act's "supplemental nutrition program."

The first provision, 7 U.S.C. § 2014(a), grants a right to food assistance to households that meet federally-established eligibility criteria: "Assistance under this program shall be furnished to all eligible households who make application for such participation." The district court correctly found that this language reflects legislative intent to create a privately enforceable right of action, rejecting the state's argument that use of the term "household" indicates that Congress did not intend to confer a private right on an "individual." As the district court noted, in the context of the SNAP Act, a household is, in effect, the "individual" with enforceable rights because SNAP benefits are issued to households, not to individuals. Moreover, the statutory term "eligible households" identifies a "class of beneficiaries" with "individual entitlements" to food assistance, which entitlements are "amenable to judicial remedy"—intrinsic attributes of a

privately enforceable statutory right as recognized in *Westside Mothers v. Olszewski*, 454 F.3d 532, 543 (6th Cir. 2006).[4]

The other statutory provision relied on by plaintiffs, 7 U.S.C. § 2020(e)(10), substantially buttresses our analysis of § 2014(a). It creates certain due-process rights to SNAP beneficiaries: "The State plan . . . shall provide . . . for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the supplemental nutrition assistance program . . . ." We need only note that we have held that a virtually identical provision in the Medicaid Act creates a privately enforceable right. In *Gean v. Hattaway*, 330 F.3d 758 (6th Cir. 2003), we reviewed 42 U.S.C. § 1396a(a)(3), which reads: "A State plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." Focusing on the state's obligation to provide a "fair hearing," we noted that "the judiciary regularly determines whether an individual has been afforded procedural due process rights," and we concluded that "a right to a fair hearing is not so vague and amorphous that its enforcement is beyond the abilities of a competent judiciary." *Gean*, 330 F.3d at 773. As a result, we held, "it is proper for plaintiffs to bring their claim for enforcement of their Medicaid rights under § 1983." *Id.* The same analysis of the SNAP statutes in this case obviously leads to the same result, *i.e.*, that the plaintiffs and similarly situated SNAP beneficiaries possess the right of private enforcement, as the district court held.

**The Right to Receive Benefits**

The SNAP Act disqualifies "fleeing felons" from food assistance if they are "fleeing to avoid prosecution or confinement after conviction . . . for a crime, or attempt to commit a crime, that is a felony under the law of the place from which the individual is fleeing," or are "violating a condition of probation or parole," *and* if they are "individuals whom law enforcement

---

[4]In *Westside Mothers*, we distinguished the "broad and nonspecific language" of 42 U.S.C. § 1396a(a)(30), which describes the Medicaid program to be implemented by the states, from the provision regarding specific notifications to be provided to Medicaid recipients under 42 U.S.C. § 1396a(a)(43)(A). The former provision creates no right of private enforcement, but merely sets up "'a yardstick for the Secretary to measure the *systemwide* performance of a State's [Medicaid] program.'" 454 F.3d at 543 (quoting *Blessing*, 520 U.S. at 330). The latter creates a privately enforceable right, subject to redress under § 1983.

authorities are actively seeking for the purpose of holding criminal proceedings" against them. 7 U.S.C. § 2015(k)(1) and (2).  But despite the fact that the statute also forbids the state agencies implementing the Act from "impos[ing] any other standards of eligibility as a condition for participating in the program," 7 U.S.C. § 2014(b), Michigan denies food assistance to an otherwise eligible household merely upon receiving information that a member of the household "is subject to arrest under an outstanding warrant arising from a felony charge."  Mich. Comp. Laws § 400.10b(1).  Under § 400.10(c), the state uses an automated program to compare the list of public assistance recipients with information regarding outstanding felony warrants in the hands of Michigan law enforcement agencies.  And, although the state statute directs MDHHS to "take all reasonable and necessary measures using the available technology to ensure the accuracy of this comparison before notifying a local office of an outstanding felony warrant or extradition warrant," Mich. Comp. Laws § 400.10c(1), there is no directive to determine whether the putative felon is being "actively sought" for prosecution before his or her name is deleted automatically from the list of eligible recipients.

The district court correctly found that Mich. Comp. Laws § 400.10b and the policy implementing it violated 7 U.S.C. §§ 2014(b) and 2020(e)(5) by *adding* requirements for disqualification not found in § 2015(k), *i.e.*, the existence of an outstanding felony warrant, without more, and entered summary judgment for the plaintiffs.  The court recognized, by analogy to identical provisions in the Social Security Act, that "fleeing to avoid prosecution" incorporates an element of intent, noting, for example, that "[c]ourts . . . have found the mere existence of an outstanding felony warrant *insufficient* to show that a person is fleeing and therefore disqualified from receiving SSI benefits."  *Barry v. Corrigan*, 79 F.Supp.3d 712, 750 (E.D. Mich. 2015) (citing *Fowlkes v. Adamec*, 432 F.3d 90, 96 (2nd Cir. 2005) ("The statute does not permit the Commissioner to conclude simply from the fact that there is an outstanding warrant for a person's arrest that he is fleeing to avoid prosecution.")).

The court was equally correct in finding that the state had deprived the plaintiffs of their right to assistance under the SNAP Act based on what was *missing* from Michigan law, *i.e.*, the conditions precedent to valid disqualification under federal law: the felon in question must be (1) *actively* "fleeing" (2) to *avoid prosecution* for a crime that is a felony "under the law of the

place from which the individual is fleeing," and the authorities must be (3) *"actively seeking"* to prosecute him or her for the offense.[5] The district court correctly declared invalid the Michigan fugitive-felon policy and the portions of Michigan statutes on which the policy was based, entered summary judgment for the plaintiffs, and enjoined the state from automatically disqualifying plaintiffs and other class members from receiving SNAP benefits based solely on an outstanding felony warrant.

**The Right to Notice and a Hearing**

The district court also determined that the form of the disqualification notice sent by the state was inadequate under the Due Process Clause of the Fourteenth Amendment and § 2020(e)(10) of the SNAP Act and its implementing regulations, 7 C.F.R. §§ 273.10(g) and 273.13(a). All the plaintiffs in this case received the same notice, giving as the reason for their disqualification: "You or a member of your group is not eligible for assistance due to a criminal justice disqualification. Please contact your local law enforcement agency to resolve." The state argues on appeal, as it did below, that the notices were adequate to comply with due process. The district court's grant of summary judgment and its resolution of legal questions are reviewed *de novo*, and the district court's factual findings are accepted unless they are clearly erroneous. *TransAmerica Assurance Corp. v. Settlement Capital Corp.*, 489 F.3d 256, 259 (6th Cir. 2007).

The state does not challenge the district court's statement of the constitutional due-process standard applicable here: "The notice must comprise '(1) a detailed statement of the intended action . . . (2) the reason for the change in status . . . (3) citation to the specific statutory section requiring reduction or termination; and (4) specific notice of the recipient's right to appeal.'" *Barry*, 79 F.Supp.3d at 741 (citing *Garrett v. Puett*, 707 F.2d 930, 931 (6th Cir. 1983)). The court found that the fourth factor had been met but that the first and second were the

---

[5]The district court also found that preemption principles provided a second, independent basis for finding Michigan's law and policy invalid. Because we conclude that the court's initial determination was correct, we pretermit discussion of the alternative ground.

crux of the issue and were lacking. It did not reach a conclusion regarding the third factor, but that one, too, appears to be missing.[6]

The district court's analysis of the first and second *Garrett* factors is persuasive and thorough:

> The notices state the intended action—denial or reduction of benefits. For example, the May 16, 2013 notice sent to Barry provides, under the heading "Intended Action," a summary of benefits—in this instance, listing "Food Assistance Program." The notice shows the relevant action as "closed" and states, "[y]our ongoing benefit has been cancelled but you will continue to receive benefits through the day before the period listed above."
>
> The reason given for the action is simply "You or a member of your group is not eligible for assistance due to a criminal justice disqualification." This fails to indicate whose conduct is at issue. It also fails to indicate which of the five types of criminal justice disqualifications applied by [MDHHS] is being invoked. From at least 2012 to mid-2013, the notices referred to section 203 of the BEM, where five types of criminal justice disqualifications from public assistance benefits were listed. In June 2013, [MDHHS] placed the fugitive felon disqualification in its own section of the BEM (204). But the notices thereafter continue to use the general phrase "criminal justice disqualification." Thus, a notice recipient must still be able to (1) determine that "BEM 204" refers to the Bridges Eligibility Manual, section 204, (2) determine that the relevant type of criminal justice disqualification can be found there, and (3) get access to the BEM. Even if a notice recipient locates a copy of the BEM and determines the type of disqualification, he or she still does not know anything about the outstanding warrant—not the underlying charge, nor which law enforcement agency issued the warrant. The recipient thus has no basis for making an informed decision whether to contest the disqualification, nor what issues need to be addressed at a hearing.
>
> Defendant maintains that notice recipients could call the [MDHHS] contact person and number listed on the notice to receive further information regarding their disqualification. But defendant cannot satisfy due process by requiring notice recipients to call elsewhere. *See Boatman v. Hammons*, 164 F.3d 286, 290 (6th Cir. 1998). Moreover, in this instance such a call would be fruitless: [MDHHS] staff are instructed "not to disclose 'Fugitive Felon' status information to the individual."

---

[6]The third factor does not appear to be met here because the notice cited only to the "BEM," not to the specific statutory section. Although this document does contain citations to the statute, successfully tracking down this information would, as the district court noted, require the recipient of a notice to figure out that BEM means Bridges Eligibility Manual and then to acquire a copy of the relevant section.

Defendant further maintains that notice recipients can obtain the necessary information by contacting law enforcement. This is potentially as ineffective as contacting [MDHHS], as the named plaintiffs' experiences shows. Law enforcement may not be able to determine which warrant is causing the disqualification, as happened in Barry's case. He discovered the existence of the first outstanding warrant only through defendant's intervention.

* * * * *

Defendant relies primarily on *Rosen v. Goetz*, 410 F.3d 919, 930-31 (6th Cir. 2005), for the proposition that due process does not require notices to include specific, individualized reasons for benefit denial, reduction, or termination. But defendant's reliance is misplaced: the *Rosen* court held the notices in that case adequate because "the very facts the plaintiffs claim are missing [*sc.* from the termination notices] are supplied by the State through a second letter that follows the Termination Notice and that the Termination Notice itself references and brings to the attention of recipients." 410 F.3d at 931. While defendant is technically correct that the *notice itself* does not need to include specific, individualized reasons for the agency action, those details must nonetheless be provided in some form. *See id.* ("Due process does not require 'reasonably calculated' notice to come in just one letter, as opposed to two."). Unlike in *Rosen*, they were not provided here.

* * * * *

The notice here similarly fails to inform recipients what they must do to lift the disqualification. If a recipient "resolves" the disqualification, benefits are automatically reinstated only if other household members are "active" — i.e., continue to receive the type of assistance from which the notice recipient has been disqualified. Otherwise, a disqualified individual must not only "resolve" the criminal justice disqualification with law enforcement, but must also reapply for benefits. The notice fails to communicate this information. The notice also fails to make clear whether a hearing request is necessary to resolve disqualifications, even if the issue is resolved with law enforcement.

*Barry*, 79 F.Supp.3d at 742-44 (citations to the district court record omitted). It is sufficient to note that none of the state's arguments on appeal call into question any part of the district court's well-analyzed decision. Because we agree that the notices sent by the state violated the recipient's constitutional right of due process, we need not address their invalidity under the SNAP Act, although we note that the analysis would be the same.

**Injunctive Relief**

The state next complains that the district court erred by granting a permanent injunction without addressing the "well-established" four-factor test that requires a plaintiff seeking injunctive relief to establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The result, the state argues, is that upon review, we may do no more than "speculate about the basis for the district court's decision." To the contrary, however, we think speculation is wholly unwarranted, given the district court's thorough and detailed 97-page explanation of why the injunction was appropriate—indeed, why it was necessary—and precisely what action the state was required to undertake. The opinion may not have set out the equitable factors explicitly but, more importantly, the district court fully complied with the non-equitable requirements of Federal Rule of Civil Procedure 65(d)(1), pursuant to which "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." The opinion likewise complied with Federal Rule of Civil Procedure 52(a)(1) and (2), which provides that "[i]n an action tried on the facts without a jury," including the grant or denial of an interlocutory injunction, the district court "must find the facts specially and state its conclusions of law separately." Rather than complain that the four factors of the traditional equitable test were not explicitly articulated, the state should have set out which of the four areas purportedly were not covered in the court's opinion, so that we might review any deficiency. In the absence of a specific argument that would establish error on the part of the district court, we find none.

**Class Certification**

A district court's decision to certify a class is reviewed for abuse of discretion. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559 (6th Cir. 2007). "The district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage

and control its own pending litigation." *Reeb v. Ohio Dept. of Rehab. & Corr.*, 435 F.3d 639, 643 (6th Cir. 2006). "A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Beattie*, 511 F.3d at 560 (internal quotation marks and citation omitted).

In this case, the district court certified both a class[7] and a subclass[8] and, the record reflects, applied the correct legal standards when it analyzed whether the proposed classes were ascertainable, whether the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a) were met, and whether the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required by Rule 23(b)(2).

The state does not contend otherwise. Instead, the state's arguments against class certification rely principally on its perception that the inaccurate LEIN information and the plaintiffs' failure to challenge it were the sources of the plaintiffs' harm, not any state action. The district court correctly rejected this argument, ruling that "[t]he injuries plaintiffs allege— inadequate notice and disqualification without a determination that they are fleeing to avoid prosecution and are actively sought by law enforcement—are legally cognizable injuries," and that "what defendant terms the 'real' harm—erroneous LEIN records—caused no harm to

---

[7][A]ll past, present, and future applicants for, or recipients of, benefits administered by the Michigan Department of Human Services (DHS) under the

- Food Assistance Program (FAP)
- Family Independence Program (FIP)
- State Disability Assistance Program (SDA)
- Child Development and Care Program (CDC), and
- Refugee Assistance Program (RAP)

public assistance programs, who have suffered or will suffer actual or threatened denial, termination, or reduction of public assistance benefits based on DHS' determination that the applicant / recipient or a member of the applicant / recipient's household is ineligible based on a criminal justice disqualification, and who receive or have received a written notice at the time of denial issued by DHS informing the applicant / recipient of the criminal justice disqualification.

[8]All past, present, and future applicants for, or recipients of, Michigan's Food Assistance Program benefits, who have suffered or will suffer actual or threatened denial, termination, or reduction of Food Assistance Program benefits based on DHS's policy of disqualifying individuals as "fugitive felons," without a finding that the individual is intentionally fleeing from justice to avoid prosecution, or custody or confinement after conviction, and/or without finding that the individual is actively sought by law enforcement, for a crime that is a felony.

plaintiffs until defendant used the LEIN records to disqualify plaintiffs from food assistance benefits . . . .  In other words, the question of whether the disqualification is lawful is different from the question of whether the LEIN records are accurate." *Barry*, 79 F.Supp.3d at 730.

On appeal, the state presses the same contentions that the district court rejected, including many arguments previously addressed in our analyses of standing and mootness, above.  We decline to reiterate our legal conclusions in this regard.  To the extent that the subclass includes persons who are actually felons who are intentionally fleeing and are actively being sought for prosecution, they might now lack substantive claims but could still advance a due process argument.  That possibility does nothing to undermine the district court's class certification.

**Procedural Motions**

Finally, the state assails several rulings by the district court in connection with the state's motion to reconsider the court's grant of summary judgment and with the plaintiffs' motions to strike exhibits attached to the motion to reconsider.  The district court struck three of the four exhibits, finding, first, that they constituted new evidence that could have been presented before the court announced judgment and, additionally, that they would not affected the outcome even if they had been timely proffered.  There was no abuse of discretion involved in any of these procedural rulings.  *See Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 480 (6th Cir. 2003) ("We review the decision to grant or deny a motion to strike for an abuse of discretion, and decisions that are reasonable, that is, not arbitrary, will not be overturned.")

The state also complains that the district court relied on a "novel hearsay theory" when it concluded that one of the affidavits the state submitted in support of the motion for reconsideration constituted hearsay and could not be considered.  Apparently the defendant reasons that because Federal Rule of Civil Procedure 56(c)(1)(A) requires a motion for summary judgment to be accompanied by affidavits, the affidavits submitted in support of summary judgment cannot be deemed to be hearsay.  However, we have recognized that if such affidavits contain hearsay, they may not be considered unless the hearsay evidence could be presented in an admissible form at trial.  *See N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).  Here, the district court did not abuse its discretion by striking evidence it deemed to

be inadmissible hearsay.  The state also complains for the first time on appeal that the district court did not also find the plaintiffs' affidavits to contain hearsay, but the state raises this argument much too late to be considered here.  *See Bailey v. Floyd Cnty. Bd. of Educ. By and Through Towler*, 106 F.3d 135, 143 (6th Cir. 1997) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.").

Nor did the district court abuse its discretion in denying the state's motion for reconsideration.  The court determined that none of the issues was properly before it but nevertheless addressed each of the issues raised and rejected them on the merits.  The procedural and substantive reasons given by the district court for denying reconsideration were valid, and the state has failed to provide any argument supporting its bare assertion that the district court's refusal to grant reconsideration was an abuse of discretion.

### CONCLUSION

For the reasons set out above we AFFIRM the district court's judgment.  We also REMAND the case to allow the district court to continue to enforce the permanent injunction and to consider any relevant action by the state in light of the Secretary's Clarification of Eligibility of Fleeing Felons Final Rule, 7 C.F.R. § 273.11(n), which took effect on November 9, 2015.  For the district court's benefit, we note that the new rule will not render this case moot, because it is still possible that a recipient of SNAP benefits might have those benefits wrongfully terminated.