**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0332n.06

Case No. 17-6448

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 09, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSEPH T. HOWARD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| STATE OF TENNESSEE; TENNESSEE | ) | STATES DISTRICT COURT FOR |
| DEPARTMENT OF SAFETY & | ) | THE MIDDLE DISTRICT OF |
| HOMELAND SECURITY; DAVID W. | ) | TENNESSEE |
| PURKEY, in his official capacity as | ) | |
| Commissioner of the Tennessee Department of | ) | |
| Safety and Homeland Security, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: COOK and DONALD, Circuit Judges; HALE, District Judge.[*]

COOK, Circuit Judge. Joseph Howard sued after a bureaucratic snafu nearly prevented him from voting in the November 2016 federal election. Although Tennessee registered him in time to vote, Howard contests the State's "motor-voter" registration scheme's legality. The district court granted the State summary judgment, deciding that Howard's successful registration mooted his initial claim and that he lacked standing to continue his challenge. We AFFIRM.

---

[*] The Honorable David J. Hale, United States District Judge for the Western District of Kentucky, sitting by designation.

## I. BACKGROUND

### A.     Facts

Congress passed the National Voter Registration Act of 1993 (the "NVRA" or the "Act") to "reinforce the right of qualified citizens to vote by reducing the restrictive nature of voter registration requirements." *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 835 (6th Cir. 1997). The Act requires states to link their driver's license application and voter registration procedures, such that "[e]ach State motor vehicle driver's license application (including any renewal application) . . . shall serve as an application for voter registration." 52 U.S.C. § 20504(a)(1). The application and registration processes must be simultaneous. *Id.* § 20503(a)(1).

Tennessee provides multiple avenues to apply for or renew a driver's license, or to notify the State's Department of Safety and Homeland Security of an address change. Residents may appear in-person at a driver services center or remotely use a self-service kiosk or an online system. A first-time license applicant must appear in-person, although he may fill out and print an online application to speed his visit. Whether completed in-person, online, or at a kiosk, each form includes a check box for an applicant to indicate that he would like to update his voter registration. Each form also cautions that marking "yes" does not actually register an applicant to vote. Instead, once the applicant marks "yes," the Department provides him a separate voter registration form. The NVRA expressly contemplates such a procedure, permitting states to employ a distinct "voter registration application portion of an application for a State motor vehicle driver's license." *Id.* § 20504(c)(2).[1]

---

[1] *See also* H.R. Rep. No. 103-9, at 9 (1993) (the NVRA "is so drafted to describe an application process that permits the use of two forms, one for the motor vehicle driver's license application and one for the voting registration application"); S. Rep. No. 103-6, at 5–6 (1993) (the

Remote applicants receive this form in the mail several days after their driver's license transaction. For in-person applicants, however, Department policy requires the examiner to "print the motor voter form," which "must be completed and signed by the applicant in the office." Once the examiner certifies the form, Department staff send it to the local election commission.

Howard's examiner allegedly failed to follow this protocol. Having recently moved to Tennessee, Howard completed and printed an online application for his October 6, 2016, in-person visit. On the form, he indicated that he would like to register to vote, but his examiner neglected to provide him with the necessary voter registration form. Instead, Howard received it in the mail, along with his driver's license, on October 26—after the registration deadline for the 2016 election.

## B.     Procedural History

Howard sued on November 2, seeking to compel the State to register him and allow him to vote. The parties agreed that Howard should have been registered and the State promptly registered him. Howard voted in the November election without further incident.

He nonetheless persisted with his case, pursuing declaratory and injunctive relief to force the State to—in his view—bring its motor-voter procedures into compliance with the NVRA. He challenged not only the in-person registration system, but the online and kiosk systems, too, along with the State's address change procedures.

The State moved for summary judgment, contending that Howard's successful registration and voting mooted his case and that he lacked standing to pursue his other claims. Howard cross-moved for summary judgment, requesting an injunction barring what he characterized as the

---

NVRA gives states discretion to use "separate application forms to be completed as part of a single, simultaneous application process").

State's ongoing NVRA violations. The court granted the State's motion and denied Howard's. He appeals both decisions.

## II. DISCUSSION

We review de novo grants of summary judgment for both mootness and lack of standing. *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016); *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004) ("We review the district court's conclusions of law with regard to mootness *de novo*.").

### A.    Whether Howard's In-Person Registration Claim is Moot

We first tackle the alleged mootness of the issue that sparked this litigation: that the Department's processing of in-person driver's license transactions violates the NVRA. As an initial matter, the State argues Howard forfeited any challenge to the district court's mootness determination because he didn't include mootness in his "statement of the issues presented" at the beginning of his primary brief, even though he otherwise adequately argues the question. Pursuant to the Rules of Appellate Procedure, an appellant's brief "*must* contain . . . a statement of the issues presented for review." Fed. R. App. P. 28(a)(5) (emphasis added). We have held that noncompliance triggers forfeiture of any un-listed issues. *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 796 (6th Cir. 2009); *see also Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 461–62 (6th Cir. 2003) (holding appellant forfeited consideration of an issue where he failed to include it in his statement of issues presented for review and only cursorily mentioned it in his brief).

Howard responds that he did not need to include mootness in his statement of issues because he explicitly listed standing, nested his mootness arguments within his broader standing claims, and because mootness and standing are closely related doctrines. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the

doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))).

Assuming—without deciding—that this issue is properly before us, we agree that by registering him to vote the State mooted Howard's claim that the Department's in-person application procedures violate the NVRA. Federal courts "may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). "A case is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 429 (6th Cir. 2013) (quoting *Hodges v. Schlinkert Sports Assocs., Inc.*, 89 F.3d 310, 312 (6th Cir. 1996)). Therefore, "[i]f events occur during the pendency of a litigation which render the court unable to grant the requested relief, the case becomes moot and . . . falls outside our jurisdiction." *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (internal quotation marks and citation omitted); *see also Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) ("The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." (internal quotation marks and citation omitted)). Because Howard is registered to vote, and because Department policy applicable to similarly-situated applicants complies with the NVRA, we cannot offer him any relief on this score.

Nevertheless, he argues his claim isn't moot because it is "capable of repetition but evading review." To qualify for this exception to the mootness doctrine, Howard must show that, first, "the challenged action is too brief to be litigated fully before it concludes," and second, that "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Barry v. Lyon*, 834 F.3d 706, 715 (6th Cir. 2016) (internal quotation marks and citation

omitted). The second requirement "is somewhat relaxed in election cases"—Howard need not show that he will run into the same issue himself; it is enough if "the controversy almost invariably will recur with respect to some future potential . . . voter." *Lawrence v. Blackwell*, 430 F.3d 368, 372 (6th Cir. 2005).

Although the State does not contest that Howard satisfies the first prong, we, like the district court, are unpersuaded that he meets the second. As the court noted, "Howard is unlikely to need to repeat Tennessee's process for new driver's license applicants." He counters that the likelihood that he will encounter problems in a variety of *other* transactions, such as changes-of-address, precludes mootness because "[i]t is more than plausible that [he] will be subjected to the Department's wrongful conduct again."

The problem with this position is that these other transactions are not the "same action" that occasioned Howard's suit. An in-person application for a new driver's license is different from, for example, a remote change-of-address transaction. In the district court's words, "the challenged action for which Howard must show a reasonable expectation of repetition is the Department's failure to include an opportunity to register to vote at some point before the conclusion of his in-person transaction."

He cannot do so. The Department's existing protocols require examiners to provide in-person applicants with voter registration forms during their visit, an NVRA-compliant practice. *See* 52 U.S.C. § 20504(c)(2). Thus, for Howard—or anyone else similarly situated—to have "a reasonable expectation that [he] will be subject to the same action again," he must "reasonabl[y] expect[]" the Department to flout its own procedures. *See Barry*, 834 F.3d at 715 (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). Howard might have a

colorable argument if he had evidence of widespread noncompliance, but he presents none. Accordingly, his in-person registration claims are moot.

### B.      Standing to Contest Alleged Violations Relating to Remote Transactions

The issue that spurred this litigation may be moot, but Howard also challenges other motor-voter practices. Procedures for remote (i.e., online and kiosk) transactions violate the NVRA, he claims, because they only provide an applicant with a voter registration form several days later via mail. This, he asserts, defies the NVRA's requirement that states "establish procedures to register to vote in elections for Federal office . . . by application made *simultaneously* with an application for a motor vehicle driver's license." 52 U.S.C. § 20503(a)(1) (emphasis added).

The district court decided that Howard lacked standing to contest any of the State's remote transaction motor-voter protocols. Standing is a fundamental prerequisite for any federal case. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). At a minimum, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "injury in fact" must be both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore*, 495 U.S. at 155). Therefore, a plaintiff must allege more than "a generally available grievance about government"; his injury must go beyond "his and every citizen's interest in proper application of the Constitution and laws." *Id*. at 573.

The court reasoned that Howard's injury—not being simultaneously registered to vote when he applied for a driver's license in-person—"cannot be traced to any flaws in the Department's online-only or kiosk-only procedures." It follows that even if there are problems with those practices, "none of those alleged deficiencies is responsible for the injuries that

differentiate Howard from a member of the general public," and he accordingly lacks standing to challenge them.

Howard argues that the district court reached the wrong result for three reasons. None persuades.

### 1. Howard's Transaction as a "Remote Transaction"

Howard believes that the district court's differentiating in-person from remote transactions represents a "false dichotomy." He claims the fact that he completed an online application, printed it, and brought it with him to his in-person driver's license visit means that his application was *really* an online transaction. Because his injury is traceable to the Department's practice of mailing remote applicants their voter registration forms, the argument goes, he has standing to challenge other remote transaction procedures.

We disagree. As the district court pointed out, "Howard's transaction . . . was not remote in any meaningful sense of the word." True, he filled out some preliminary paperwork online, but he still completed his application in-person, as required. Howard's own brief belies his argument: he admits that the "transaction giving rise to the present suit was consummated during his October 6, 2016 in-person visit." The in-person procedure that injured him is distinct from the remote transaction procedures he targets.

### 2. Later Change-of-Address Application

After filing his complaint, Howard completed a change-of-address transaction on the Department's website. He says that in addition to updating his driving record, he meant for the transaction to update his voter registration. But he claims that it did not, and that the Department

therefore violated the NVRA, "open[ing] the door to him challenging all online and remote transactions."

Not so. Any challenge to the Department's change-of-address procedures cannot confer standing because it is not a proper part of this litigation. As the district court noted, the NVRA imposes distinct obligations on states regarding driver's license applications, *see* 52 U.S.C. § 20504(a)–(c), and changes-of-address, *see id.* § 20504(d). Howard raised his change-of-address claim when he moved for summary judgment. But his complaint only alleges that the Department failed to comply with the NVRA's license application provisions, not its change-of-address requirements. We have recognized that plaintiffs cannot raise new claims in their summary judgment briefing and should instead request leave to amend their complaint. *See Guiffre v. Local Lodge No. 1124*, No. 90-3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (holding claims first asserted in summary judgment briefing were not properly before the court because defendants had "no opportunity to investigate them when they conducted their own discovery"); *see also Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 787–88 (6th Cir. 2005); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004); *Franks v. Salazar*, 816 F. Supp. 2d 49, 58 n.5 (D.D.C. 2011) ("[P]laintiffs cannot use their summary judgment briefing to press claims not raised in their . . . complaint."). "To permit a plaintiff to do otherwise would subject defendants to unfair surprise." *Tucker*, 407 F.3d at 788.

### 3.  *Concrete and Particularized Injury-in-Fact*

Finally, Howard maintains the district court overlooked his standing to contest the remote transaction procedures despite his suffering a concrete and particularized injury when he was not registered to vote during his in-person visit. He relies on the Supreme Court's recent decision, *Spokeo, Inc. v. Robins*, "for the proposition that a plaintiff must suffer a concrete injury particular

to him or her, no more and no less." Thus, he insists that even if his injury is limited to his in-person visit, the mere fact of this injury suffices for standing and "should have ended the District Court's analysis."

But to have standing, Howard must show injury-in-fact, traceability, and redressability. *See* Part II.B, *supra*. *Spokeo* does not hold otherwise; although it focuses on injury-in-fact, it reiterates that *all three elements* form the "'irreducible constitutional minimum' of standing." 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). As the State notes, that Howard suffered a qualifying injury is a necessary, *but not sufficient*, condition of standing. *See id.*

True, the Department's failure to register him during his in-person visit injured Howard. Yet as we have already discussed, his claims arising from that injury are moot, *see* Part II.A, *supra*, and he has traced no causal link between his injury and the Department's motor-voter procedures for remote transactions. Regardless of whether those procedures comply with the NVRA, they have not injured him in any way that distinguishes him from a member of the general public.

### III. CONCLUSION

For these reasons, we AFFIRM.

**BERNICE BOUIE DONALD, Circuit Judge, concurring in the judgment.** I concur in the majority's decision to affirm the district court's grant of summary judgment to the State on both mootness and standing grounds. However, I write separately to express my concern about the fact that Joseph Howard was compelled to bring a lawsuit against his State to ensure he could exercise his right to vote in an upcoming election. This case exemplifies the risks to the voting franchise, and to our democracy, should states not strictly comply with applicable law in ensuring that citizens can exercise their right to vote.

As the majority notes, the National Voter Registration Act of 1993 (the "NVRA" or the "Act") was passed to "reinforce the right of qualified citizens to vote by reducing the restrictive nature of voter registration requirements." *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 835 (6th Cir. 1997). In a recent NVRA case, Justice Breyer highlighted the historical context in which the NVRA was enacted, stating that the among the goals of the Act was to "increase the number of eligible citizens who register to vote in elections for Federal office." *Husted v. A. Philip Randolph Inst.*, No, 16–980, ⸺ U.S. ⸺, ⸺ S. Ct. ⸺, ⸺ L. Ed. 2d –⸺, 2018 WL 276766118, at *17 (June 11, 2018) (Breyer, J., dissenting) (internal quotation marks omitted) (quoting 52 U.S.C. § 20501(b)). The House Report for the NVRA highlighted the many methods states had historically used to prevent citizens from exercising their constitutional franchise, including poll taxes, literacy tests, residency requirements, selective purges, elaborate administrative procedures and annual reregistration requirements—all "developed to discourage participation." H.R. Rep. No. 103–9, at 2 (1993). It is against this backdrop that I express my concern for the extraordinary measures the plaintiff had to take in this case to exercise his right to vote.

Relevant in this matter, one of the Act's requirements is that state motor vehicle applications serve as voter registration applications. *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 192 (2008) (citing 52 U.S.C. § 20501). Here, as the majority notes, State procedure required that Howard be provided with a voter application form when he applied in-person for his driver's license—but this procedure was not followed. In order to become registered in time to cast a ballot in the November 2016 election, Howard was compelled to bring suit against the State. Though Howard was able to vote timely, he only succeeded in exercising his right after bringing a federal lawsuit against the State to enforce the State's compliance with the NVRA.

It is self-evident that filing a lawsuit should not be a prerequisite for exercising one's right to vote. It is also self-evident that not every citizen has the financial means, nor should be required, to bring a lawsuit to ensure she can vote in an upcoming election. Beyond the burden to the individual citizen, were this systematic failure to allow a citizen to register to vote to go unchecked, the requirement to seek relief through the courts hundreds of times would place an inordinate and unnecessary burden on the court system and tax citizen resources. Perhaps it is the rare case that this will occur. And indeed, the State asserts that it is. But it is not entirely clear that the State of Tennessee is in compliance with the NVRA, which requires that "[e]ach State shall include a voter registration application form for elections for Federal office *as part* of an application for a State motor vehicle driver's license." 52 U.S.C. § 20504(c)(1) (emphasis added). Whether the State's inclusion of an additional voter registration form—which a clerk must print and provide to an in-person driver's license applicant—satisfies the statutory requirement that the voter registration application be included "as part of" the driver's license application, is a question we do not reach today. I agree with the majority, however, that on the facts of this case, Howard's claim was

mooted, and he does not have standing to challenge other procedures.  Therefore, I concur in the

judgment.